793 So.2d 495 (2001)
David JONES and Sandra Jones, Individually and on Behalf of their Minor Child, Brittany Jones, Plaintiffs-Appellants,
v.
Doug COBB and Janis Cobb, Individually and in their Capacity as Natural Tutors of Justin Cobb, Defendants-Appellees.
No. 34,926-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*496 Richard L. Fewell, Jr., West Monroe, Counsel for Appellants.
Theus, Grisham, Davis & Leigh by Charles H. Heck, Jr., Monroe, Counsel for Appellees.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
CARAWAY, J.
In this case, the trial court granted summary judgment dismissing plaintiffs' personal injury suit arising from an accident which occurred in a "sand lot" baseball game. A twelve-year-old swung a bat and struck an eight-year-old in the head causing serious injury. Finding genuine issues of material fact, we reverse the ruling of the trial court and remand for further proceedings.

Facts
Brittany Jones ("Brittany") was injured on November 3, 1997, after being accidentally struck in the head with a baseball bat. She was participating in a neighborhood "sand lot" game on or near property owned by Doug and Janis Cobb. Their twelve-year-old son, Justin Cobb ("Justin"), was batting. Eight-year-old Brittany was standing next to her bicycle somewhere behind home plate, waiting for her turn at bat. Justin's nine-year-old sister, Ginny Cobb, was pitching. A fourth child from the neighborhood, Ryan Smith, age seven, was also present. After Justin swung at the ball, Brittany was struck on the back swing. As a result of getting hit with the bat, Brittany sustained a head injury with a minimal depressive skull fracture, concussion and contusion. She was hospitalized for about a week, half of the time in Intensive Care. Brittany's parents sued Justin's parents to recover that portion of Brittany's medical expenses (estimated to range between $6,000 and $7,000) not covered by their health insurance and damages for Brittany's mental and physical pain and suffering.
The Cobbs moved for summary judgment, alleging that Brittany moved directly behind Justin while he was waiting for *497 the pitch, that she failed to tell Justin she was behind him and that he did not know she was there. Defendants' motion was supported by Justin's and Ginny's affidavits. Plaintiffs' counsel opposed the motion, arguing that defendants failed to prove that they were entitled to judgment as a matter of law, and that they were liable for their son's negligent conduct under La. Civ.Code arts. 2315 and 2318. Copies of Brittany's deposition and her parents' depositions were attached to their opposition. Brittany's testimony indicated that she was standing beside her bicycle in a position "angled behind" Justin when she was struck. After hearing arguments, the trial court ruled that there was no genuine issue of material fact, finding that Justin was not negligent and dismissed Brittany's suit with prejudice.

Summary Judgment
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Babin v. Winn-Dixie Louisiana, Inc., XXXX-XXXX (La.6/30/00), 764 So.2d 37; Robinson v. Brookshires # 26, 33,713 (La.App.2d Cir.8/25/00), 769 So.2d 639. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Babin, supra.
The burden of producing evidence at the hearing on the motion for summary judgment is on the mover, normally the defendant, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial, usually the plaintiff, must come forth with evidence which demonstrates his or her ability to meet the burden at trial. Id.; Robinson, 769 So.2d at 640.
The trial court cannot make credibility determinations on a motion for summary judgment. Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 236. Likewise, the trial court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Id. Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Oaks v. Dupuy, 32,070 (La.App.2d Cir.8/18/99), 740 So.2d 263.

Discussion
The substantive law governing this accident is La. C.C. art. 2318, which provides as follows:
The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
By interpretation of La. C.C. art. 2318, our supreme court in Turner v. Bucher, 308 So.2d 270 (La.1975), adopted a form of strict liability of the parent for acts of the child. The court's ruling emphasized that the activity causing the injury "would have been sufficiently negligent, imprudent and careless to constitute civil negligence if the child had been a person of discernment." Id. at 271. The court held:
We conclude that although a child of tender years may be incapable of committing *498 a legal delict because of his lack of capacity to discern the consequences of his act, nevertheless, if the act of a child would be delictual except for this disability, the parent with whom he resides is legally at fault and, therefore, liable for the damage occasioned by the child's act. This legal fault is determined without regard to whether the parent could or could not have prevented the act of the child, i.e., without regard to the parent's negligence. It is legally imposed strict liability. This liability may be escaped when a parent shows the harm was caused by the fault of the victim, by the fault of a third person, or by a fortuitous event.
Having made the threshold determination that a father is responsible for the delicts of his minor child whether or not the child is of sufficient age to be capable of discerning the consequences of his acts, we need not determine whether this particular child, Gregory Bucher, was possessed of the requisite age and capacity to know the consequences of his act. Such an inquiry would be irrelevant and immaterial in answering the issue before us. The fact that the conduct was tortious when measured by normal standards is enough to render the father liable therefor.
Id. at 277.
At the time of the ruling in Turner v. Bucher, supra, Louisiana's strict liability law for damages caused by a person or thing in one's custody or garde was in its developmental stage with cases such as Holland v. Buckley, 305 So.2d 113 (La. 1974) and Loescher v. Parr, 324 So.2d 441 (La.1975), providing interpretation for La. C.C. arts. 2317, et seq. Unlike the other settings where strict liability developed, no subsequent ruling by the Louisiana Supreme Court has made express application of the Turner decision in a case involving a child's accident,[1] and the number of such cases has not been significant in rulings by the courts of appeal.[2] Despite the 1996 legislative changes for strict liability regarding the custody of things and animals, La. C.C. art. 2318, as applied in Turner, remains applicable.
Although the standard by which the actions of a child are measured has not been applied in another supreme court case since Turner, the court in its landmark *499 ruling in Loescher v. Parr, supra, elaborated on the standard as follows:
Recently, upon examination of the code scheme of fault liability, we held that under Article 2318 the parent of a minor child is liable for the damage caused by the child's conduct which creates an unreasonable risk of injury to others, even though the parent himself is not personally negligent and the child is too young to be personally negligent.
Id. at 446 (emphasis supplied).
The unreasonable risk of injury test was likewise discussed and applied in Boyer v. Seal, 553 So.2d 827 (La.1989). There the plaintiff asserted that strict liability for her injuries applied to the defendant-owner of a cat which had merely brushed against plaintiff's leg, causing her to fall in the defendant's home. Finding no liability, the court held that the unreasonable risk of harm principle applied in measuring the risk created by the actions of the defendant's cat. Discussing Louisiana's strict liability law and citing Loescher, the court stated that the "liability of the owner or guardian `arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.'" Id. at 834.
The judicial process involved in deciding whether a person in another's custody, or a thing under garde poses an unreasonable risk of harm is similar to that of taking into account all of the social, moral, economic and other considerations as would a legislator regulating the matter. Id. at 835; Entrevia v. Hood, 427 So.2d 1146 (La.1983). This so-called risk-utility analysis has been more recently described by the supreme court as follows:
There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. To assist the trier-of-facts, we note that many factors are to be considered and weighed, including:
(1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved.
Dupree v. City of New Orleans, 99-3651 (La.9/1/00), 765 So.2d 1002, 1012.
One distinction of the present case from Turner, supra is the possible negligent involvement of a second child, the victim. Nevertheless, with Louisiana's adoption of the comparative fault system in 1979 and the jurisprudential application of comparative fault in the strict liability context, Brittany's alleged carelessness at the time of this accident may not be used to formulate the conclusion that Justin and his parents are free from fault under La. C.C. art. 2318. See, Howard v. Allstate Insurance Co., 520 So.2d 715 (La.1988) and Murray v. Ramada Inns, 521 So.2d 1123 (La.1988). Justin's conduct must be measured by the strict liability standard announced in Turner, supra and by the risk-utility analysis set forth above.
Based upon the above understanding of the law, in this case we find that there are genuine issues of material fact presented in this summary judgment setting, which require weighing conflicting facts and inferences regarding the circumstances of the children's baseball game. The setting of the game is loosely described in the affidavits and deposition testimony. The game clearly involved the use of a metal or wooden bat which inflicted serious injury on Brittany. Although Justin's size and his power with the bat are not detailed, the age differential between Justin and Brittany is significant. Most importantly, we find that Brittany's position and movement in relation to Justin at the time of the fateful swing are *500 disputed in the evidence. While argument can be made that the younger child's sudden and unexpected movement might be the sole cause of the accident absolving defendants of liability, the swinging of a bat with knowledge of the presence of young children nearby without taking adequate precautions can likewise be argued as conduct presenting an unreasonable risk of harm. In any event, Brittany's testimony indicates that she was not moving toward Justin at the time of the accident and she had just gotten off of her bicycle. She also indicated that she had previously been playing in the game and had batted. Thus, Justin's ability to receive notice of her nearby presence and to take precautions for her safety is in dispute. Under the test expressed in Turner, these clouded facts leave it unclear whether the activity causing the injury "would have been sufficiently negligent, imprudent and careless to constitute civil negligence if the child had been a person of discernment." Likewise, weighing all of the facts in the application of the risk-utility analysis discussed above requires that the fact-finder hear the differing versions of the game from the participants and select between the competing inferences from the facts surrounding this accident.
Accordingly, we find that the trial court's grant of summary judgment was improper, and we reverse and remand the case to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed to appellees.
REVERSED AND REMANDED.
NOTES
[1] While the leading case on Louisiana's comparative fault system, Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), involved a 12-year-old's accidental shooting of another hunter, the non-custodian father of the child was held independently negligent and the Turner ruling and strict liability were never discussed by the court.
[2] In one very similar case involving a child's swing of a golf club that caused injury, the appellate court found that the 10-year-old child was not careless "when gauged by standards applicable to children of his age, maturity, experience and knowledge." Gremillion v. State Farm Mutual Insurance Co., 331 So.2d 130, 133 (La.App. 3d Cir.1976). The Louisiana Supreme Court denied writs in the case, noting that "[t]he result is correct." 334 So.2d 205 (La.1976). Three justices would have granted the writ including Justice Tate, who wrote: "Although the `result' may be correct (in that the plaintiff child's own fault may bar recovery). The law announced conflicts with Civil Code Article 2318 and Turner v. Bucher, 308 So.2d 270 (La.1975). Although defendant's child may himself be free of liability for the reasons stated, the defendant father is strictly liable for acts of his child, whether six years of age or ten, which cause undue risk of injury to others." Id. In another similar case, the appellate court found the parent liable for the child, who was involved in an air rifle accident, holding that "an adult would discern the consequences of firing an air rifle" in the direction of another child and be grossly negligent. Ryle v. Potter, 413 So.2d 649, 651 (La. App. 1st Cir.1982).