NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-446

LOYTON COURVILLE, ET UX.

VERSUS

FORD MOTOR COMPANY, ET AL.

**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-C-0848-A
HONORABLE JAMES P. DOHERTY  JR., DISTRICT JUDGE

**********
**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED.**

**John M. Jefcoat**
**Galloway & Jefcoat, L.L.P.**
**P. O. Box 61550**
**Lafayette, LA 70596-1550**
**Counsel for Plaintiffs/Appellants:**
    **Loyton Courville and**
    **Elaine Melancon Courville**

**Michael M. Noonan, T.A.**
**James E. Swinnen**
**McGlinchey Stafford, PLLC**
**643 Magazine Street**
**New Orleans, LA 70130**
**Counsel for Defendant/Appellee:**

**Bush Hog, L.L.C.**
George Vernon
Law Office of George Vernon
P. O. Box 300
1625 10th Street, 2nd Floor
Monroe, WI 53566
Counsel for Defendant/Appellee:
      Bush Hog, L.L.C.

William Luther Wilson
C. Michael Hart
Taylor, Porter, Brooks & Phillips, L.L.P.
P. O. Box 2471
Baton Rouge, LA 70821-2471
Counsel for Defendants/Appellees:
      Ford Motor Company and
      New Holland North America, Inc.

Steven C. Judice, T.A.
Keogh, Cox & Wilson LTD.
P.O. Box 1151
Baton Rouge, LA 70821
Counsel for Defendant/Appellee:
      M&L Industries, Inc.

**Pickett, J.**

The plaintiffs, Loyton and Elaine Courville, appeal a judgment of the trial court in favor of the defendants, Ford Motor Company, New Holland North America, Inc., Bush Hog, L.L.C., and M & L Industries, Inc., granting the defendants motions for summary judgment and dismissing the plaintiffs suit at their expense. We affirm the judgment of the trial court.

## LAW AND DISCUSSION

The law regarding the appellate review of summary judgments, which is well settled, was reviewed by this court in *Hines v. Riceland Drilling Co.*, 04-503, pp. 3-4 (La.App. 3 Cir. 9/29/04), 882 So.2d 1287, 1289-90, *writ denied*, 04-2705 (La. 1/07/05), 891 So.2d 681:

> In *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230-31, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
>
>> Our review of a grant or denial of a motion for summary judgment is de novo. *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
>>
>>> The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary

1

burden of proof at trial, there is no genuine
issue of material fact.   La. C.C.P. art.
966(C)(2).

After undertaking a complete de novo review of the record, we are in complete

agreement with the trial court.   We are impressed with the written reason for

judgment issued by the trial court and adopt them as our own:

## FACTUAL BACKGROUND

This matter comes before the court in the nature of a suit for
damages due to injuries the Plaintiff sustained while operating a tractor
to remove fence posts.   As indicated by his deposition testimony,
Plaintiff Loyton Courville was born in 1941 and has lived all his life on
the family farm in Sunset, Louisiana.   He has also owned and driven a
variety of tractors since the early 1950s. (Courville Deposition, pp. 8-
14).

In 1991 Mr. Courville bought the Ford Model 6610 tractor new
from M&L Industries.   He subsequently returned to M&L for the
purchase and installation of a Bush Hog Front End Loader with a Hay
Bale fork lift attachment.  The lift mechanism operating control lever is
located on the right side of the tractor steering wheel.  The tractor has a
manual transmission with two shift levers located on the floorboard
directly in front of the tractor seat.   The lever on the left is the
transmission shift lever which controls four forward and one reverse
gear.   The lever on the right is the transfer case shift lever which
controls the high and low range.

Mr. Courville was injured in an accident on November 4, 2000,
as he was using the tractor and front end loader to pull and remove fence
posts.   He would drive the tractor up to a fence post, dismount the
tractor and attach a chain to the fence post and to the blade spear on the
front of the front end loader.  Plaintiff would then walk back to the left
side of the tractor and reach across the tractor's transmission control
levers to operate the hay bale fork, lifting it by manipulating the loader
control situated to the right of the operator seat.  This caused the post to
be pulled out of the ground.  Mr. Courville would then lower the forks,
untie the fence post from the front end loader, remount the tractor, and
repeat the process with the next fence post.

Plaintiff was pulling posts as described above when the accident
occurred.   He placed the tractor and front end loader into position
alongside a fence post. Mr. Courville then shifted to neutral, but left the
engine running in order to have power to operate the loader.  He then
dismounted the tractor but did not lock the park brake.  After chaining

2

the post to the front end loader Mr. Courville returned to the left side of the tractor and positioned himself between the left rear wheel and the tractor frame. While standing on the ground Plaintiff then reached across the tractor to operate the Bush Hog loader control lever located on the right side of the steeling wheel. Although there is no evidence of what actually transpired next, in all probability the plaintiff contacted or "bumped" either the transmission lever or the high/low lever causing the tractor to move forward. Consequently, Mr. Courville's foot was trapped under the left rear tire and he was run over by the tractor.

## PROCEDURAL POSTURE OF CASE

All three defendants in this case have filed Motions for Summary Judgment seeking to have Plaintiff's claims against them dismissed as a matter of law. Each of them maintains that no material facts are in dispute. Ford Motor Company also asserts that there is no evidence that the tractor it manufactured was unreasonably dangerous. Defendant Bush Hog, L.L.C. similarly maintains that Mr. Courville does not have sufficient evidence to support a claim that the front end loader was defective and unreasonably dangerous. M&L Industries, Inc. avers that the front end loader-tractor combination which resulted after they installed the Bush Hog loader was not unreasonably dangerous. The defendants also argue that Plaintiff's claims should be barred because Mr. Courville used the tractor and front end loader in a manner which does not constitute a reasonably anticipated use.

## APPLICABLE LAW
## SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of all except certain disallowed actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art 966 A(2); *Magnon* v. *Collins,* 98- 2822 (La. 7/7/99), 739 So.2d 191. The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter before the court on motion for summary judgment, then the movant may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art 966 C(2); *Hardy* v. *Bowie,* 98-2821 (La. 9/8/99), 744 So.2d 606; *Hayes* v. *Autin,* 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, *writ denied,* 97-0281 (La. 3/14/97), 690 So.2d 41. Appellate review of a grant or denial of summary judgment is *de*

3

*novo.* *Independent Fire Ins. Co.* v. *Sunbeam Corp.,* 99-2181 (La. 2/29/00), 755 So.2d 226.

## THE LOUISIANA PRODUCTS LIABILITY ACT

The Louisiana Products Liability Act, La. R.S. 9:2800.51-2800.60, establishes the exclusive bases of liability for manufacturers for damage caused by their products. The plaintiff's burden of proof is contained in [La.]R.S. 9:2800.54:

    A.    The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

    B.    A product is unreasonably dangerous if and only if:

        (1)    The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

        (2)    The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

        (3)    The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

        (4)    The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

    C.    The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.

    D.    The claimant has the burden of proving the elements of Subsections A, B, and C of this Section.

## ANALYSIS
## REASONABLY ANTICIPATED USE

La.R.S. 9:2800.53(7) defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should

reasonably expect of an ordinary person in the same or similar circumstances." In *Delphin* v. *DOTD,* 94CA-1261 (2d Cir. 05/24/95, reh. den. 07/20/95), 657 So.2d 328, [*writs denied*, 95-2116, 95-2124 (La. 11/17/95), 663 So.2d 716], the court maintained that this definition is to be strictly construed. The inclusion of the phrase "reasonably anticipated use" in the provisions of the LPLA conveys the message that the manufacturer is not responsible for accounting for every conceivable foreseeable use of a product. *Delphin,* supra, citing *London* v. *MAC Corp. of America,* 44 F 3d 316 (5th Cir. 1995). The phrase "reasonably anticipated use" creates a more restrictive scope of manufacturer liability than the pre-LPLA concept of "normal use." *Daigle v. Audi of America Inc.*, 90-1254 (3rd Cir. 10/02/92), 598 So.2d 1304[, *writ denied*, 604 So.2d 1306 (La.1992)]. In accordance with the Daigle court's holding, the court in *Lockart* acknowledged that while virtually any conceivable use is foreseeable, not every foreseeable use is reasonable. *Lockart v. Kobe Steel Ltd.,* 92-4437 (5th Cir. 05/6/93), 989 F.2d 864. Thus the standard is objective and "reasonably anticipated use" refers to the uses the manufacturer "should reasonably expect of an ordinary consumer." *Id.* at 867.

Relying on this line of jurisprudence, the court finds in the instant case that Plaintiff's use of the tractor and front end loader was not a "reasonably anticipated use" as defined by the Louisiana Products Liability Act. This court makes such a finding just as the court in *Myers v. American Seating Company*, 93-1350 (1st Cir. 5/20/94), 637 So.2d 771[, *writs denied*, 94-1569, 94-1633 (La.10/7/94), 644 So.2d 631, 632], found a folding chair in and of itself was not unreasonably dangerous but the use of the chair, i.e., standing on the rear portion of it thereby causing it to jackknife, was not a reasonably anticipated use given the obvious danger of such a use. The record reflects that Mr. Courville is a seasoned tractor operator who is cognizant of the inherently dangerous nature of the apparatus. Yet he operated the equipment in a manner which contravened warnings contained in the operator's manuals of both Ford Motor Company and Bush Hog, L.L.C. In fact, Plaintiff concedes that he did not even read those portions of the manuals dealing with warning or caution information. (Courville deposition pp. 19-20, 74). Had he reviewed this material, Mr. Courville would have seen that Ford warned against operating the tractor's controls while standing beside the tractor. He would have also been put on notice that the Bush Hog loader was to be operated from the operator's seat **only.** Still, Plaintiff's status as a knowledgeable and experienced tractor operator indicates that [he] might not have headed any warnings even if he had read them. Mr. Courville testified that he didn't know whether or not he would have followed any warning telling him to stay in the operator's seat because it was more convenient to stand beside the tractor while pulling up and removing posts than it was to get on and off the tractor. (Courville deposition pp. 73- 74, 97.) Also, Plaintiff argues that his use of the tractor and front end loader was

5

indeed a "reasonably anticipated use" since the warnings that Ford and Bush Hog stress in their operator's manuals take into account Mr. Courville's action's, uses, and body position at the time of his accident. For example, Plaintiff maintains that language such as "Operate the loader from the Operator's seat only" evidences Bush Hog's anticipation that an operator would attempt to use the loader from a position other than the seat.

This notion is dispelled by the court's decision in *Kapen v. American Isuzu Motors*, 96-30544 (U.S. 5th Cir. 09/30/98) 157 F.[3]d 306. In *Kampen* a car jack failed when the plaintiff was using it to hold up the car while he got underneath the car to inspect it. Isuzu had warned against using the jack for this purpose. The court relied on *Lockart*, supra, that the plaintiff's reliance upon the jack to protect him while he crawled under the car was not a reasonably anticipated use. A manufacturer should not reasonably anticipate that a user will disregard explicit warnings and place himself in a position of peril in direct contravention of those warnings. See *Kampen,* 157 [F.3d] at 313. Regardless of whether misuse of a product was foreseeable, misuse does not constitute a reasonably anticipated use under the Louisiana Products Liability Act. *Frith v. John Deere Co.*, 3:93-0832[sic] (W.D.La. 6/11/96), 955 F.Supp. 663[, *aff'd* 108 F.3d 332 (5 Cir.1997)].

## UNREASONABLY DANGEROUS IN CONSTRUCTION OR COMPOSITION

Plaintiff has made no allegation that the tractor and/or front end loader are "unreasonably dangerous in construction or composition" as defined by [La.]R.S. 9:2800.55. In any event, the court finds that the pleadings offer no evidence the tractor or front end loader deviated in any way from the manufacturer's specifications or performance standards when they left the manufacturer's control.

## UNREASONABLY DANGEROUS IN DESIGN

[La.]R.S. 9:2800.56 provides that a product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

(1)     There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2)     The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product

6

shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

Plaintiff argues that an alternative design for the Ford tractor existed since the same model tractor at issue in this case is sold with a Syncromesh transmission. It is further maintained that adoption of the Syncromesh transmission placed no burden upon the manufacturer since this alternative design was being used by Ford at the time the tractor purchased by Mr. Courville was being sold.

The court is not persuaded by this argument. Even if Plaintiff's tractor had come equipped with a Syncromesh transmission, the gearshift selectors for such a transmission would been located on the right side of the steering column, which is the same side where the control lever for the front end loader is located. Hence, there is no proof that this alternative design would have decreased the risk of calamity when Mr. Courville stood near the left rear tire and reached across the tractor to operate the Bush Hog loader on the right side of the tractor. Plaintiff has not established that a Syncromesh transmission constitutes a safer design for the Ford tractor. The requirements of [La.]R.S. 9:2800.56 have therefore not been met with respect to this product.

With regard to the front end loader, Plaintiff claims that there existed an alternative to the design utilized by Bush Hog. Plaintiff's memorandum asserts that placing a presence detector in the operator seat is a feasible design that is currently implemented by other manufacturers. The court is of the opinion, however, that such a seat sensor is not practical for use on the Ford tractor since it would prevent any movement of the tractor unless the operator was seated. This proposed alternative design is in conflict with the deposition testimony of Plaintiff s own expert, Steve Killingsworth. Mr. Killingsworth testifies that the ability of the operator to stand while operating the tractor is important for the operator's safety since it is crucial that a farmer be able to look forward to see what is in front of his tractor. (Killingsworth deposition p. 227). Plaintiff's expert also states in his affidavit that the seat sensor constitutes a feasible alternative design for the Bush Hog front end loader. He states that it has been present in the market on other farm implements since 1989. However, the court is not presented with any evidence that such a sensor has ever been use[d] on front end loaders. Moreover, Plaintiff does not provide any proposed design for the seat sensor. Neither does Plaintiff offer any studies which indicate that the seat sensor would pass the risk/utility test of *Thomas* v. *Sport City, Inc.* 31-994 (La. App. 2nd Cir. 6/16/99), 738 So.2d 1153. Following the reasoning of the *Thomas* court, the plaintiff in the instant case has the burden of proving that an alternative design existed **and** that the alternative design would function feasibly in the purpose for

7

which the front end loader is intended without affecting its utility. Here, Plaintiff has failed to meet his burden under *Thomas* as well as under [La.]R.S. 9:2800.56. Consequently, the court finds that the Bush Hog front end loader was not unreasonably dangerous in design.

## WARNINGS

There are no allegations in this case that the tractor and/or front end loader are "unreasonably dangerous because of inadequate warning." In fact, the record contains various examples of warnings issued by Ford and Bush Hog. These warnings were written in operator's manuals produced by both manufacturers. They could also be found on decals that were placed on the equipment. In this case, though, Plaintiff did not head the said warnings. And interestingly Plaintiff's own expert testifies that the accident would not have occurred had Mr. Courville followed the manufacturer's instructions. (Killingsworth deposition p. 135).

## RULING

For the reasons explained above, the court finds that Plaintiff's use of the tractor and front end loader, i.e., operating them from the ground, is not a reasonably anticipated use. The court also finds that neither the Ford tractor nor the Bush Hog front end loader were unreasonably dangerous in design. As Plaintiff has not proven that any genuine issues of material fact or law remain, summary judgment in favor of Ford Motor Company/New Holland North America, and Bush Hog L.L.C is appropriate. In addition defendant M&L Industries, Inc., as a mere distributor of the equipment cannot be held to a higher standard than manufacturers Ford and Bush Hog, so granting summary judgment in favor of this defendant is also proper. The court grants all three Motions for Summary Judgments [sic] submitted by the defendants in this case and dismisses Plaintiff's claims against these defendants as a matter of law.

Accordingly, for the reasons given, the judgment of the trial court is affirmed.

All costs of this appeal are assessed against the plaintiffs, Loyton and Elaine Courville.

**AFFIRMED.**